IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

COURTNEY B. DUNSTON
#00738511                                                                                            PLAINTIFF

V.                          Case No. 3:25-CV-00006-DPM-BBM

JASMINE SANCHEZ, Compliance Sgt.,
Greene Co. Detention Center; JACOB
WHITE, Jail Administrator, Greene Co.
Detention Center; SHEILA ROBERTSON,
Retired Jail Administrator, Greene Co.
Detention Center; and CODY HOWE,
Compliance Officer, Greene Co. Detention
Center                                                                                               DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge D.P. Marshall Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Marshall may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

**I.     BACKGROUND**

On January 15, 2025, Plaintiff Courtney B. Dunston ("Dunston"), a pretrial detainee then housed at the Greene County Detention Center ("GCDC"), filed a *pro se* Complaint

pursuant to 42 U.S.C. § 1983.[1] (Doc. 1). On February 12, 2025, Dunston filed a Motion to Amend. (Doc. 4). The Court directed the Clerk of Court to file the Motion as an Addendum to Dunston's Complaint. (Doc. 5). Accordingly, the operative filings are Dunston's initial Complaint, (Doc. 1), and the subsequent Addendum, (Doc. 6). In his filings, Dunston alleges that Defendants Compliance Sergeant Jasmine Sanchez ("Sergeant Sanchez"), Retired Jail Administrator Shelia Robertson ("Administrator Robertson"), Compliance Officer Cody Howe ("Officer Howe"), Jail Administrator Jacob White ("Administrator White"), and the GCDC violated his constitutional rights.

Before Dunston may proceed with this action, the Court must screen his claims in accordance with the Prison Litigation Reform Act ("PLRA").[2] 28 U.S.C. § 1915A(a). For the reasons stated below, the Court recommends that Dunston's Complaint and Addendum be dismissed without prejudice for failure to state a claim upon which relief may be granted.

## II. ALLEGATIONS

Dunston alleges that, when he arrived at the GCDC on March 1, 2024, the "C/O's" took all of his belongings. (Doc. 1 at 4). Unbeknownst to Dunston, the facility threw away all of his commissary items—save the unperishable items. *Id.* According to Dunston, the inmates have no idea what will happen with their property, and, even though policy allows

---

[1] As of April 10, 2025, Dunston is housed at the Tallahatchie County Correctional Facility in Tutwiler, Mississippi. (Doc. 8 at 1).

[2] The PLRA requires federal courts to screen prisoner complaints seeking relief against a governmental entity, officer, or employee. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or a portion thereof if the prisoner has raised claims that: (a) are legally frivolous or malicious; (b) fail to state a claim upon which relief may be granted; or (c) seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b). When making this determination, the Court must accept the truth of the factual allegations contained in the complaint, and it may consider the documents attached to the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011).

them to keep certain items, the facility "takes away those items" and forces the inmates to repurchase them.³ *Id.* The inmates are not aware of the discarded property until they arrive at general population and attempt to use the kiosk, where they are forced to agree to all "their terms [and] rules [and] policies." *Id.* at 5. In Dunston's case, he lost $320.67 in funds "because the facility tossed all of [his] commissary without [his] consent." *Id.* Dunston reached out to compliance officers about retrieving his property "their policy states [he] can keep," and the officers told him that he could not have any items from his previous jail. *Id.* According to Dunston, this is "nowhere in their policy." *Id.*

After multiple attempts on March 17, 2024, March 19, 2024, and September 18, 2024, to resolve the matter, Dunston wrote to the administration and the compliance officer about mailing his debit cards, IDs, bank cards, and jewelry to his home.⁴ (Doc. 1 at 5). At that time, Administrator White told Dunston that GCDC did not have a policy in place to allow Dunston to mail his property home, but the "facility was working on something for individuals like [Dunston]." *Id.* at 5–6.

At some point during legal mail retrieval, Officer Howe told Dunston that he could mail his personal property if he purchased a manilla envelope and stamps. (Doc. 1 at 6). Officer Howe also explained that property "should be mailed out with a tracking number [and] certified mail." *Id.* On September 19, Sergeant Sanchez took Dunston to the front to handle the mailing process. *Id.* According to Dunston, he placed the following items inside

---

³ Throughout this Recommendation, the Court corrects any capitalization errors in Dunston's writing internally and without brackets.

⁴ Dunston alleges that he is not from Arkansas, and he had no family members to retrieve his belongings. (Doc. 1 at 5).

3

his envelope: (1) four bank cards, (2) three cash app cards, (3) two social security cards, (4) two Moorish American ID cards, (5) one 24k gold rope chain with pendant, (6) one 24k gold watch, (7) one gold wedding band, (8) two gift cards, (9) two diamond earrings in 14k gold prongs, (10) one jail bank card, (11) one 14k gold prong nose ring, (12) five 14k gold teeth, (13) his birth certificate, and (14) his Texas ID card. *Id.* Dunston handed Sergeant Sanchez the package and left, but, as he walked away, Sergeant Sanchez told Dunston that the jail is not responsible for any loss. *Id*. Dunston alleges that he responded, "yeah, aight," and walked back to his dorm. *Id.*

Dunston asserts that, according to GCDC policy, any time "something is done" with an inmate's property at GCDC, "there's supposed to be some type of documentation." (Doc. 1 at 6–7). But Dunston claims that he never: (1) signed any forms about the contents of his package, or (2) signed any forms waiving the jail's responsibility for his property. *Id*. at 7. Dunston further states that there is no proof his mail was sent, and he has complained several times. *Id.* The package never made it to the destination, although the package was mailed off on September 19, 2024. *Id.*

After Dunston grieved and threatened a lawsuit, the package reappeared in December. (Doc. 1 at 7). But the following items were missing: (1) one debit card, (2) one necklace and pendant, (3) two earrings, (4) one nose ring, (5) five gold teeth, (6) one wedding band, (7) one ID card, (8) one social security card, (9) his birth certificate, (10) one cash app card, and (11) two gift cards. *Id.* Sergeant Sanchez denies responsibility, and Dunston has stopped communicating with the facility but brings this lawsuit for "the loss of property." *Id.*

4

Dunston further asserts that, at the time of this incident, the facility had a policy in place "that was not followed." (Doc. 1 at 8). Dunston finds Administrator Robertson, Administrator White, Sergeant Sanchez, and Officer Howe to be "responsible for the loss of [his] property."[5] *Id.* According to Dunston, Officer Howe and Sergeant Sanchez were the "administrators" of the package being sent, and Sergeant Sanchez was "the last person with the package[.]" *Id.* Dunston believes that the facility experimented with his package, but the experiment failed, and "now the facility is trying to sever themselves from responsibility." *Id.* Dunston claims that his valuable package should have had security or insurance, like certified mail or a tracking number. *Id.*

Dunston requests a transfer to another facility "due to retaliation and mail tampering." Dunston alleges that he has twice tried to mail this lawsuit, but "they" are checking his mail, taking out documents, and throwing them away. (Doc. 1 at 8). Dunston further believes that the facility is tracking his mail and discarding his mail to the Clerk of Court, causing Dunston to worry about his ability to receive future orders and judgments. *Id.* at 9. According to Dunston, even now, the facility will not correct a miscalculation on a prisoner calculation form.[6] *Id.* Dunston alleges that he has spoken to several people— from corporals to sergeants—about this issue, but "they" will not look at the documents, which is a "stall tactic" to hinder him from filing suit. *Id.* Dunston is on a hunger strike

---

[5] Specifically, Dunston alleges: "And because at the time of said occurrences, Mrs. Robertson was the jail admin, Mr. White was the jail supervisor, [and] Mrs. Sanchez [and] Cody Howe [were] the compliance officers, I find all of them responsible for the loss of my property." (Doc. 1 at 8).

[6] It appears that Dunston is referring to the "Calculation of Initial Payment of Filing Fee" attached to his Motion to Proceed *in forma pauperis.* (Doc. 2 at 3).

because of these tactics; he is experiencing daily harassments; and he is in fear of his well-being while at GCDC. *Id.* In closing, he requests a transfer "prior to [his] suit being filed." *Id.*

In his Addendum, Dunston notes that he has sued each Defendant in their official capacity and states that each Defendant "has caused plaintiff a lost [sic] of property without due process of the law." (Doc. 6 at 2). Dunston then requests to add the GCDC as a Defendant "due to the Fourteenth (14th) Amendment violation[.]" *Id.*

For relief, Dunston requests "[$]5,000 in compensation, [$]5,000 in punitive damages[,] [and] [$]7,500 in pain and suffering per person."[7] (Doc. 1 at 9). Dunston sues all Defendants in their official and individual capacities. *Id.* at 2.

## III.  DISCUSSION

To survive pre-service screening under the PLRA, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[L]abels and conclusions," a "formulaic recitation of the elements of a cause of action," and "naked assertions devoid of further factual enhancement" are insufficient to plead a plausible claim. *Id.* Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).

However, "[a] pro se complaint must be liberally construed," and courts "should construe the complaint in a way that permits the layperson's claim to be considered within

---

[7] In a separate "Relief" section of Dunston's Compliant, Dunston requests monetary compensation, punitive damages, and pain and suffering in the amount of $5,000 per person. (Doc. 1 at 10).

6

the proper legal framework." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014) (cleaned up; citations omitted); *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (citation omitted). Even liberally construing Dunston's allegations, however, he fails to state a claim for relief.

### A.    Claim Against GCDC

In his Addendum, Dunston requests to add the GCDC as a Defendant "due to the Fourteenth (14th) Amendment violation[.]" *Id.* It is well settled, however, that a county detention facility is *not* a legal entity that can be sued in a § 1983 action. *See Owens v. Scott County Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003); *LaDeaux v. Woodbury Cnty. Jail*, 857 F. App'x 892, 893 (8th Cir. 2021). Accordingly, Dunston fails to state a claim for relief against Defendant GCDC.

### B.    Individual-Capacity Due Process Claims

Dunston alleges that $320.67 in commissary items were disposed of without his consent and that the Defendants are responsible for the loss of his envelope containing several valuable items. (Doc. 1 at 5, 8). To the extent Dunston may be attempting to raise a due process claim regarding his lost property, this claim fails.

It is well settled that an inmate cannot maintain a Fourteenth Amendment due process claim for loss of property if he has an adequate post-deprivation remedy under state law. *See Hudson v. Palmer*, 468 U.S. 517, 533–36 (1984); *Parratt v. Taylor*, 451 U.S. 527, 541 (1981); *McClinton v. Arkansas Dept. of Corr.*, 166 F. App'x 260, 260–61 (8th Cir. 2006). Here, Dunston can seek to recover his property by filing a conversion action in state court. *See Bausley v. Dugan*, 110 F. App'x 736, 736 (8th Cir. 2004) (holding that a prisoner

7

could not bring a § 1983 claim against county jail employees for seizure of personal property because he could bring a conversion action against them in state court); *Carniglia v. Dearmon*, 16 F. App'x 548, 549 (8th Cir. 2001) (same); *Butler v. Smith,* 208 F.3d 217, 217 (8th Cir. 2000) (holding that prisoner, who alleged he was wrongly charged for meals while housed at the county jail, could not seek § 1983 relief because he could bring a conversion in state court).

Because Dunston has an adequate remedy under Arkansas law for his alleged loss of property, any such claim against Defendants should be dismissed without prejudice.

### C.    Individual-Capacity Access-to-Courts Claims

Dunston also asserts that unnamed officers are checking his mail, taking out documents, and throwing them away. (Doc. 1 at 8). Dunston alleges that he has "attempted to file this suit twice," and "this is the third time." *Id.* Specifically, Dunston believes that the facility is discarding his mail to the Clerk of Court, which causes Dunston to worry about his ability to receive future orders and judgments. *Id.* at 9.

Dunston separately alleges that GCDC will not correct a miscalculation on his "Calculation of Initial Filing Fee" form. *Id.* According to Dunston, he has spoken to several people—from corporals to sergeants—about the issue with his calculation forms, but "they" will not look at the documents, which is a "stall tactic" to hinder him from filing suit. *Id.* Finally, Dunston alleges he is experiencing daily harassment and is in fear of his well-being at the GCDC. (Doc. 1 at 9). To the extent Dunston may be attempting to raise a First Amendment access-to-courts claim, this claim fails.

8

The First Amendment encompasses an inmate's right to access to the courts "to attack their sentences, directly or collaterally" or "challenge the conditions of their confinement." *Lewis v. Casey*, 518 U.S. 343, 355 (1996); *Johnson v. Avery*, 393 U.S. 483, 489–90 (1969). Inmates, however, are not guaranteed the ability to file "everything from shareholder derivative actions to slip-and-fall claims." *Lewis*, 518 U.S. at 355. Moreover, to proceed on an access-to-courts claim, an inmate must allege facts showing that he was "actually injured" in regard to a "nonfrivolous and arguably meritorious underlying legal claim." *White v. Kautzky*, 494 F.3d 677, 680 (8th Cir. 2007) (citing *Christopher v. Harbury*, 536 U.S. 403, 413 (2002); *Lewis*, 518 U.S. at 353–55.).

To prove actual injury, a plaintiff must "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." *White v. Kautzky*, 494 F.3d 677, 680 (8th Cir. 2007) (citing *Lewis*, 518 U.S. at 353). Speculative injuries are insufficient; the inmate must identify a specific injury related to the alleged deprivation. *Hartsfield*, 511 F.3d at 833; *Lewis*, 518 U.S. at 351–52. In other words, to show actual injury, the defendants' actions must have hindered and prejudiced the plaintiff's efforts to pursue a legal action. *Lewis*, 518 U.S. at 351; *Berdella v. Delo*, 972 F.2d 204, 210 (8th Cir. 1992).

First, the Court addresses the allegations regarding the thrown-out Complaints. Dunston specifically states that he has tried to file "*this* suit" twice before. (Doc. 1 at 8) (emphasis added). But Dunston's allegations fall short of alleging any actual injury, "such as the inability to meet a filing deadline or to present a claim." *Lewis*, 518 U.S. at 348. As evidenced by the instant lawsuit, Dunston was ultimately able to get his Complaint filed. He does not allege that either of the previous two Complaints contained any additional

allegations or claims not asserted in the instant Complaint or Addendum. Thus, Dunston has not plausibly alleged he was "actually injured" by having his previous Complaints thrown out by unnamed officers.

Second, the Court addresses Dunston's allegations regarding the thrown-out court communications. At most, Dunston alleges that thrown-out court communications cause him to worry about *future* court communications. Again, Dunston does not allege that he missed a court deadline, was unable to present a claim, or was "actually injured" in any way due to the unnamed officers' actions. Moreover, Dunston's worry about future communications is merely speculative and does not state a claim for relief. *See Twombly*, 550 U.S. at 555.

Third and finally, the Court addresses the facility's alleged refusal to correct a miscalculation on Dunston's forms. Even if officers miscalculated Dunston's "Calculation of Initial Payment of Filing Fee," the possible miscalculation of Dunston's filing fee is not an "actual injury" that hindered his efforts to pursue a legal claim. In sum, Dunston's current allegations fail to state any plausible First Amendment access-to-courts claim.

### D.   Official-Capacity Claims

Dunston also sues Defendants in in their official capacities, (Doc. 2 at 2), which is the equivalent of a claim against their employer, Greene County. *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). Thus, to plead an official-capacity claim, Dunston must allege facts showing that the purported constitutional violation was the result of an official Greene County policy, an unofficial custom, or a failure to train. *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). Additionally,

if Dunston cannot establish individual liability on his underlying claims, his official-capacity claims will also fail. *Jackson v. Buckman*, 756 F.3d 1060, 1067, n.3 (8th Cir. 2014) ("Absent an underlying constitutional violation . . . official capacity . . . claims . . . necessarily fail."). For screening purposes, Dunston's filings could be *liberally* construed as alleging an "unofficial custom" related to property processing and maintenance. But Dunston cannot establish any individual-capacity liability. Thus, Dunston fails to state any official-capacity claims.

## IV.   CONCLUSION

IT IS THEREFORE RECOMMENDED THAT:

1. Dunston's Complaint, (Doc. 2), and Addendum, (Doc. 6), be DISMISSED without prejudice for failure to state a claim upon which relief may be granted.

2. The Court RECOMMEND that the dismissal count as a "strike" for the purposes of the Prison Litigation Reform Act. 28 U.S.C. § 1915(g). The Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting this Recommendation would not be taken in good faith.

DATED this 29th day of May, 2025.

_____
UNITED STATES MAGISTRATE JUDGE